76 P.3d 473 (2003)
The PEOPLE of the State of Colorado, Complainant,
v.
Eddie G. DISTEL, Respondent.
No. 03PDJ005.
Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.
July 24, 2003.
Opinion by Presiding Disciplinary Judge, ROGER L. KEITHLEY, and Hearing Board Members JOHN E. HAYES, a member of the bar, and B. LaRAE ORULLIAN, a representative of the public.

REPORT, DECISION AND IMPOSITION OF SANCTION

SANCTION IMPOSED: ATTORNEY DISBARRED
A Sanctions Hearing pursuant to C.R.C.P. 251.15(b) was held on July 24, 2003, before the Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") Roger L. Keithley, and two Hearing Board Members, John E. Hayes, a member of the bar, and B. LaRae Orullian, a representative of the public. Kim E. Ikler, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Eddie G. Distel, the respondent, ("Distel") did not appear in person or by counsel.
The People filed a Complaint in this matter on January 16, 2003. The Citation and Complaint were sent by regular and certified mail to Distel on the same date. The People filed a Proof of Service on February 24, 2003, indicating that the Proof of Service shows *474 that the Citation and the Complaint were sent to both respondent's last known address. Service was in accord with C.R.C.P. 251.32(b) and is sufficient. Distel failed to file an Answer or otherwise respond to the Complaint.
On February 24, 2003, the People moved for default on the claims set forth in the Complaint. Copies of the Motion for Default were sent to Distel at his last known address. He did not respond to the Motion for Default.
On April 10, 2003, the PDJ granted the Motion for Default as to the facts set forth in the Complaint, which were deemed admitted, and as to the claims set forth in the Complaint, which were deemed established. The PDJ's order entering default was sent to Distel at his last known address.
A Sanctions Hearing was held on July 24, 2003, before the Hearing Board. The People's exhibit 1, the Judgment and Order of the Supreme Court of Arizona, was admitted into evidence. The Hearing Board considered the exhibits, the facts established by the entry of default, and the People's argument, and made the following findings of fact, which were established by clear and convincing evidence.

I. FINDINGS OF FACT

Eddie G. Distel has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on October 16, 1974, and is registered upon the official records of the Supreme Court, registration number 05727. He is subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b).
On December 4, 2002, the Supreme Court of Arizona issued an order disbarring Distel from the practice of law in that state. The Supreme Court of Arizona found, among other misconduct, that Distel engaged in knowing conversion of client funds, trust account violations and neglect. In addition, Distel knowingly made misstatements of material fact to a tribunal. A copy of that decision is attached hereto as exhibit "A."

II. CONCLUSIONS OF LAW AND IMPOSITION OF SANCTION

The Complaint in this action seeks imposition of the same discipline under the reciprocal discipline provisions of C.R.C.P. 251.21. The same discipline that was imposed in the foreign jurisdiction shall be imposed in Colorado unless certain exceptions exist. People v. Calder, 897 P.2d 831, 832 (1995).
C.R.C.P. 251.21(d) provides in part:
At the conclusion of proceedings brought under this Rule, the Hearing Board shall issue a decision imposing the same discipline as was imposed by the foreign jurisdiction, unless it is determined by the Hearing Board that:
(1) The procedure followed in the foreign jurisdiction did not comport with requirements of due process of law;
(2) The proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Hearing Board cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction;
(3) The imposition by the Hearing Board of the same discipline as was imposed in the foreign jurisdiction would result in grave injustice; or
(4) The misconduct proved warrants that a substantially different form of discipline be imposed by the Hearing Board.
Under the provisions of C.R.C.P. 251.21(d), if the respondent attorney seeks to challenge the validity of the disciplinary order entered by the foreign jurisdiction, the attorney must file with the PDJ an Answer and a full copy of the record of the disciplinary proceedings which resulted in the imposition of that disciplinary order within twenty days after service of the Complaint. Distel neither answered the Complaint nor filed the requisite documentation to enable him to challenge the Arizona disbarment order. Accordingly, Distel is foreclosed from challenging the validity of the Arizona disbarment order.
A final adjudication in another jurisdiction of attorney misconduct constituting *475 grounds for discipline is, for purposes of attorney disciplinary proceedings in Colorado, conclusively established. See C.R.C.P. 251.21(a). The disbarment order issued by the Supreme Court of Arizona is such a final order.
Having reviewed the order issued by the Supreme Court of Arizona, the Hearing Board finds that none of the exceptions found in C.R.C.P. 251.21(d) are applicable and it is, therefore, bound to impose the same discipline as imposed by Arizona.

III. ORDER

It is therefore ORDERED:
1. EDDIE G. DISTEL, attorney registration 05727, is DISBARRED from the practice of law in the State of Colorado effective thirty-one days from the date of this order and his name shall be stricken from the roll of attorneys licensed to practice in this state.
2. Eddie G. Distel is Ordered to pay the costs of these proceedings. The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

EXHIBIT A

SUPREME COURT OF ARIZONA

Supreme Court No. SB-02-0131-D

IN THE MATTER OF A SUSPENDED MEMBER OF THE STATE BAR OF ARIZONA

EDDIE G. DISTEL,

Bar No. 014771
Disciplinary Commission Nos. 97-2568, 98-1281, 98-1565, 99-0262, 99-0695, 99-1439, 99-1613, 00-0053, 00-0352, 00-1149, 00-1681

JUDGMENT AND ORDER
This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no discretionary or sua sponte review occurring,
IT IS ORDERED, ADJUDGED AND DECREED that EDDIE G. DISTEL, a suspended member of the State Bar of Arizona, is hereby disbarred from the practice of law, effective the date of this Judgment and Order, for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.
IT IS FURTHER ORDERED that EDDIE G. DISTEL shall pay restitution in the following amounts to the following individuals:

 Rafael Suarez $ 3,100.00
 Monika Halterman $ 3,000.00
 Sylvia Grijalva $ 5,000.00
 Sharan Morris $ 729.76
 __________
 TOTAL $11,829.76

IT IF FURTHER ORDERED that Respondent shall pay in full any and all claims paid by the Client Protection Fund, not to exceed the maximum permissible payment of $100,000.
IT IF FURTHER ORDERED that respondent shall comply with all the provisions of Rule 63, Rules of the Supreme Court of Arizona, including, but not limited to, Rule 63(a), which requires that Respondent notify all of his clients, within ten (10) days from the date hereof, of his inability to represent them and that he should promptly inform this Court of his compliance with this Order as provided in Rule 63(d).
IT IF FURTHER ORDERED that EDDIE G. DISTEL shall pay the costs and expenses of these proceedings in the amount of $6,645.45, together with interest at the legal rate from the date of this judgment.
DATED this 4th day of December 2002. NOEL K. DESSAINT, Clerk

DISCIPLINARY COMMISSION REPORT
This matter came before the Disciplinary Commission of the Supreme Court of Arizona on July 3, 2002, pursuant to Rule 53(d), Ariz. R.S.Ct., for consideration of the Hearing Officer's findings of fact, conclusions of law and *476 recommendation filed April 22, 2002, providing for disbarment, restitution and costs.

Decision
The Commission's standard of review is set forth in Rule 53(d)2, which states that the Commission reviews questions of law de novo. In reviewing findings of fact made by a hearing officer, the Commission applies a clearly erroneous standard.
Therefore, having found no findings of fact clearly erroneous the eight[1] members of the Commission unanimously recommended adopting and incorporating by reference the Hearing Officer's findings of fact, conclusions of law and recommendation for disbarment, restitution in the following amounts to the following individuals.[2]

 Rafael Suarez $ 3,100.00
 Monika Halterman $ 3,000.00
 Sylvia Grijalva $ 5,000.00
 Sharan Morris $ 729.76
 ________________ __________
 TOTAL $11,829.76

and costs of these disciplinary proceedings.
RESPECTFULLY SUBMITTED THIS 13th day of August 2002.
C. Alan Bowman, Chair
Disciplinary Commission
Original filed with the Disciplinary Clerk
this 13th day of August 2002.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION OF HEARING OFFICER
A hearing having been held on December 18, 2001, at which time Respondent, Eddie G. Distel, appeared on his own behalf, and the State Bar of Arizona appeared through Bar Counsel, Shauna R. Miller, Esq. The Hearing Officer, having heard the evidence and considered the documentary evidence submitted, makes the following Findings of Fact, Conclusions of Law, and Recommendation.

Procedural History
This disciplinary matter was initiated by the State Bar's filing of a seven-count Complaint on October 27, 1999. Respondent was suspended from the practice of law on an interim basis on June 12, 2000. An Amended Complaint, adding four additional counts, was filed on August 7, 2000. Lastly, a separate two-count Complaint was filed on June 8, 2001. The matters were consolidated by Order of the Hearing Officer on November 8, 2001. Respondent has been involved in this formal disciplinary proceeding since the original Complaint was filed on October 27, 1999. Respondent did not respond to that Complaint until after an Application for Entry of Default was filed on December 1, 1999. On August 1, 2000, the State Bar's Motion to Amend the original Complaint was granted. Again, Respondent did not file an Answer to the Amended Complaint until after an Application for Entry of Default was filed.
The State Bar filed a Motion to Compel Discovery on February 6, 2001, to compel Respondent to file a disclosure statement in compliance with Arizona Rules of Civil Procedure, Rule 26.1. Only thereafter did Respondent file a disclosure statement.

Stipulation
Prior to the commencement of testimony, Respondent stated that he did not contest the allegations contained in the State Bar's Amended Complaint dated August 8, 2000, with the exception of the allegations contained in Counts Three and four ("the Suarez matter"). The allegations of Counts One, Two, Five, Six, Seven, Eight, Nine, Ten, and Eleven are deemed admitted. Respondent also does not contest the allegations contained in Counts One ("Sylvia Grijalva") and Two ("Sharan Morris") of the June 8, 2001, Complaint. These allegations are also deemed admitted.

FINDINGS OF FACT
1. Respondent was admitted to practice law in Arizona on October 22, 1994.

*477 COUNT ONE (97-2568)

(HANNA)

Findings of Fact: Count One
2. Respondent filed a notice of appeal with the Court of Appeals, Division 2, on or about June 10, 1997, on behalf of his client Ms. Jill Hanna.
3. On or about September 19, 1997, the Court of Appeals dismissed the appeal for non-payment of the filing fee.
4. Respondent filed a motion to reinstate, which was granted on or about October 17, 1997.
5. The order of reinstatement stated, inter alia, that Respondent's opening brief was to be filed within thirty (30) days from October 17, 1997, the date of the order.
6. On or about November 13, 1997, Respondent filed a stipulation requesting that the time to file the opening brief be extended until December 1, 1997.
7. On or about November 18, 1997, the Court of Appeals issued an order denying the extension, but leave was given to re-file if there was good cause for requesting the extension.
8. Respondent did not re-file the stipulation requesting an extension to file the opening brief.
9. Respondent did not file the opening brief within thirty (30) days of the appellate court's October 17, 1997, order.
10. On or about December 3, 1997, opposing counsel filed a motion to dismiss the appeal.
11. The appellate court granted opposing counsel's motion to dismiss on or about December 29, 1997, noting that there had been no opposition to the motion.
12. On or about January 20, 1998, Respondent filed a motion to reinstate the appeal.
13. One reason Respondent gave for reinstating the appeal was that the loss of the original filing fee caused duplicate and inconsistent orders to be issued by the appeals clerk, resulting in confusion over which orders to rely on or comply with.
14. One reason Respondent gave for reinstating the appeal was that his requests to the court reporter for transcripts of the lower court proceedings had gone unheeded.
15. On or about March 10, 1998, the appellate court denied the motion to reinstate the appeal.

COUNT TWO (98-1565)

(OPPMAN)

Findings of Fact: Count Two
16. William Oppman was a defendant in the civil contract action Wholesale Auto Exchange v. William Oppman, et al, No. 314575, Pima County Superior Court. The relief sought in the civil action met the conditions for compulsory arbitration and the matter was assigned to an arbitrator.
17. The complaint filed on August 13, 1996, by Wholesale Auto was verified and had copies of promissory notes attached as exhibits.
18. Wholesale Auto filed a motion for summary judgment, which was supported by the affidavit of Wholesale Auto's personal representative who had personal knowledge of the facts and transactions in the matter.
19. Respondent was aware of the subject matter of the complaint and had been discussing the matter with Mr. Oppman from on or about February 17, 1997.
20. On or about April 11, 1997 the arbitrator granted Wholesale Auto's motion for summary judgment and entered judgment against Mr. Oppman.
21. William Oppman formally retained Respondent on April 18, 1997.
22. On or about April 23, 1997, Respondent filed a motion for reconsideration on behalf of Mr. Oppman stating that the Oppmans had a good faith and meritorious defense to the complaint.
23. The motion for reconsideration did not state what the "good faith and meritorious defense to the complaint" was.
24. The motion for reconsideration was denied on or about May 22, 1997.
*478 25. On or about June 10, 1997, Respondent filed an appeal from the arbitration award and a motion to set for trial.
26. On or about September 12, 1997, Wholesale Auto filed a motion for sanctions and summary judgment.
27. On or about September 25, 1997, Respondent prepared and filed a response to the motion for summary judgment.
28. The response to the motion for summary judgment was not supported by affidavit.
29. The response to the motion for summary judgment did not contain any evidence in opposition to plaintiffs motion.
30. On or about September 25, 1997, Respondent prepared and served on plaintiffs counsel Mr. Oppman's 26.1 disclosure statement.
31. The 26.1 disclosure statement prepared by Respondent did not contain statements of fact in support of the legal theories set forth and did not identify any witnesses or exhibits.
32. The 26.1 disclosure statement prepared by Respondent was not verified.
33. A hearing on the summary judgment motion was held on October 14, 1997.
34. Respondent did not advise Mr. Oppman about the hearing on the summary judgment motion. Neither Respondent nor Mr. Oppman appeared at the hearing.
35. The motion for summary judgment was granted on or about October 20, 1997, and Mr. Oppman was sanctioned $500.00.
36. Respondent filed a motion for reconsideration on or about November 6, 1997, in which he argued, inter alia, that he had not received notice of the hearing on Wholesale Auto's motion for sanctions and summary judgment.
37. The court denied the motion for reconsideration on or about November 21, 1997.
38. On or about January 9, 1998, judgment was entered against Mr. Oppman in the amount of $6,608.72 for damages, $149.25 for accrued court costs and $2,202.66 for attorney fees.
39. Prior to the summary judgment, Mr. Oppman asked Respondent about filing a bankruptcy. Respondent advised Respondent that a bankruptcy filing would stay collection procedures and other court actions pending disposition by the bankruptcy court.
40. Respondent's secretary/paralegal, Sandy Wright, prepared Chapter 7 bankruptcy forms for Mr. Oppman while Respondent was representing Mr. Oppman in the civil contract action brought by Wholesale Auto.
41. Ms. Wright also drafted a motion to continue, a notice of hearing and motion for approval of sale for Mr. Oppman to file pro Se.
42. Respondent did not review or revise the bankruptcy papers. Respondent did not supervise Ms. Wright in any manner with regard to preparation of the bankruptcy papers, the motion to continue, the notice of hearing, or the motion for approval of sale.
43. Respondent failed to consult with his client and keep him reasonably informed about the representation. Respondent failed to explain matters to the extent reasonably necessary so his client could make informed decisions. Among other things, Respondent failed to consult with Mr. Oppman regarding the Rule 26.1 disclosure statement, failed to inform Mr. Oppman about the hearing on the motion for summary judgment scheduled for October 14, 1997, and failed to inform or consult with Mr. Oppman about the motion for reconsideration prior to filing said motion.
44. Respondent did not have any basis for appealing the arbitrator's decision that was not frivolous.
45. Respondent's purpose in appealing the arbitrator's judgment was to frustrate Wholesale Auto's attempt to receive rightful redress and was solely for delay.
46. Respondent knowingly made a false statement of material fact to the court when he filed the motion for reconsideration stating that he had not received notice of the hearing on the motion for summary judgment.

*479 COUNT THREE (99-0262)

(SUAREZ)

Findings of Fact: Count Three
47. Respondent represented Rafael Suarez in an Equal Employment Opportunity Commission (hereinafter the EEOC) matter.
48. Respondent sent a letter to the EEOC on December 7, 1995, advising that Mr. Suarez had asked Respondent to inquire into Mr. Suarez' case. (Exhibit 29.)
49. Respondent sent a facsimile to the EEOC on July 29, 1996, asking that the EEOC send the right to sue letter to Respondent's fax number. (Exhibit 30.)
50. Respondent sent a letter to the EEOC on July 30. 1996, advising that Respondent was representing Mr. Suarez in the matter that the EEOC was investigating. (Exhibit 31.)
51. Respondent sent a letter to the EEOC on December 18, 1996, again advising of the representation and asking that the EEOC provide Respondent with all information or evidence that the EEOC investigation had produced. (Exhibit 32.)
52. Respondent received the notice of the right-to-sue letter from the EEOC.
53. Respondent advised Mr. Suarez that the 90-day deadline to file his complaint after receiving the right-to-sue letter was tolled while Mr. Suarez was incarcerated.
54. Respondent did not file a complaint on behalf of Mr. Suarez within the statute of limitations after receiving the right-to-sue letter. (Exhibit 33)

COUNT FOUR (99-0262)

(SUAREZ)

Findings of Fact: Count Four
55. Respondent represented Rafael Suarez in a criminal matter.
56. Mr. Suarez paid Respondent a $3,800.00 retainer to represent him in the criminal matter.
57. Respondent refunded $900.00 to Mr. Suarez from the original $3,800.00 retainer.
58. Respondent misrepresented to the State Bar that he refunded an additional $1,500.00 to Mr. Suarez from the original $3,800.00 retainer.
59. Respondent knowingly made a false statement of material fact to the State Bar when he stated that he had refunded an additional $1,500.00 to Mr. Suarez from the original $3,800.00 retainer.
60. Respondent refunded $900.00 to Mr. Suarez so Mr. Suarez could make improvements on the property so it could be sold and/or deeded to Respondent to pay Respondent's fees in the criminal matter.
61. Respondent misrepresented to the State Bar that he refunded the $900.00 to Mr. Suarez to provide food and clothing for Mr. Suarez' family.
62. Respondent misrepresented to the State Bar that he did not ask Mr. Suarez to sell his property or execute any deeds to pay Respondent's attorney's fees.
63. Respondent did not properly prepare for Mr. Suarez' trial because Respondent was displeased that Mr. Suarez had not fulfilled his payment obligations to Respondent.
64. Respondent filed a motion to withdraw in the criminal matter several weeks before trial noting that Mr. Suarez had failed to fulfill his payment obligations to Respondent and that continued representation of Mr. Suarez would result in an unreasonable financial burden on Respondent. (Exhibit 35.)
65. The court denied Respondent's motion and advised Respondent that if Mr. Suarez was indigent he could submit proof of indigency and the court would consider ordering the county to pay for Mr. Suarez' costs. (Exhibit 36.)
66. Respondent did not submit proof of Mr. Suarez' indigency.
67. Respondent coerced Mr. Suarez into signing a letter stating that Mr. Suarez had discharged Respondent.
68. Respondent filed a motion of June 26, 1997, asking the court to reconsider its ruling on the motion to withdraw on the basis that Respondent had been discharged by Mr. Suarez.
*480 69. Mr. Suarez filed a pro se motion of June 27, 1997, asking the court to appoint Respondent as private counsel.
70. The court would not allow Respondent to withdraw.
71. Respondent made a false statement of material fact to the court in the motion for reconsideration when he led the court to believe that Mr. Suarez had voluntarily discharged him.
72. Mr. Suarez was convicted in the criminal matter and Respondent agreed to represent him in his appeal for $2,000.00.
73. Respondent received a partial retainer of $500.00 from Mr. Suarez for the appeal.
74. Respondent failed to timely file a notice of appeal on behalf Mr. Suarez.

COUNT FIVE (98-1281)

(TRUST ACCOUNT)

Findings of Fact: Count Five
75. On June 11, 1998, Respondent wrote a check on his Arizona State Bar Foundation Trust Account, in payment of Respondent's State Bar convention fees.
76. Check number 1454 was drawn on Respondent's Norwest Bank client trust-account, account number XXXX-XXXX, in the amount of $205.00.
77. Respondent stated in a July 21, 1998, letter to the State Bar that the $205.00 check represented earned fees that had not been transferred to his operating account.
78. Respondent failed to produce trust account records to verify that the $205.00 check represented earned fees. Specifically, Respondent could not produce a copy of a client ledger card showing the origin of fees that were earned, or a copy of his general journal reflecting the transfer of the earned fees into his operating account.
79. Respondent failed to keep client and/or third party property separate from his own property.

COUNT SIX (99-0695)

(TRUST ACCOUNT)

Findings of Fact: Count Six
Respondent wrote check number 1368 to Desert Endodontics, Ltd. on his Arizona State Bar Foundation Trust Account on August 25, 1997.
80. Check number 1368 was drawn on Respondent's Norwest Bank client trust account, account number XXXX-XXXX, in the amount of $470.00.
81. Thomas J. Cipriano, D.D.S. dba Desert Endodontics, Ltd. attempted to negotiate check number 1368, however the check was not honored because Respondent had insufficient funds in his trust account to cover the check.
82. Check number 1368 was issued to cover the dental expenses of Travis Distel, who is not Respondent's client.
83. Respondent failed to keep client and/or third party property separate from his own property.

COUNT SEVEN

(TRUST ACCOUNT)

Findings of Fact: Count Seven
85. Pursuant to the investigation arising out of file nos. 97-2568 and 98-1281, the Director of the Law Office Management Assistance Program, Diane Ellis, met with Respondent to perform a pre-diversion assessment of Respondent's law office
86. Ms. Ellis met with Respondent on February 1, 1999, to review, among other things, Respondent's available trust account records, which consisted of the checkbook and one bank statement.
87. Respondent informed Ms. Ellis that most of the pre 1999 records were offsite and Ms. Ellis was not able to ascertain whether complete trust account ledgers were being maintained.
88. During the February 1, 1999, meeting, Ms. Ellis noted that expenditures were made from the trust account that were inappropriate. The expenditures were not identified as pertaining to a specific client and *481 were not the type of expenditure that should be made from a trust account. Examples include, but are not limited to, the following: checks made payable to Respondent or to cash; checks made payable to Sandi Wright or S. Wright; a check made payable to a restaurant; checks made payable to an educational institution; checks made out to pay for personal expenses.
89. During the February 1.1999 meeting. Ms. Ellis noted that at various periods of time the check register did not have a running balance.
90. During the February 1, 1999 meeting, Ms. Ellis was informed that trust account checks had been returned because the trust account had insufficient funds in it to honor them.
91. Ms. Ellis scheduled another appointment with Respondent to review the trust account records that she asked Respondent to provide for review and which he purported to have offsite. Respondent failed to provide the documents that Ms. Ellis asked Respondent to provide for review.

V

COUNT EIGHT (99-1439)

(TRUST ACCOUNT)

Findings of Fact: Count Eight
92. The State Bar of Arizona received two overdraft notices from Norwest Bank, one dated July 15, 1999, and one dated July 23.1999, relating to Respondent's client trust account.
93. The July 15, 1999 overdraft notice indicated that check number 2045 in the amount of $800.00 was presented for payment on July 21, 1999. Norwest Bank honored the check, leaving Respondent with a negative balance of $244.19 in his client trust account.
94. The July 23, 1999 overdraft notice indicated that check number 2046 in the amount of $130.00 was presented for payment on July 23, 1999. Norwest Bank honored the check, leaving Respondent with a negative balance of $234.19 in his client trust account.
95. The State Bar's staff examiner sent Respondent a charging letter on August 17, 1999 requesting that Respondent file a written response regarding the overdraft notices and that he attach all supporting documentation.
96. Respondent replied on August 31, 1999 and stated that he had requested an "interim statement" from the back and would respond further to the State Bar's letter when it was received.
97. Respondent sent a supplemental response to the State Bar on September 9, 1999 stating that a $500.00 deposit made on July 26, 1999, had been noted in his account records as having been deposited on July 20, 1999.
98. The State Bar requested specific trust account records from Respondent on September 16, 1999, and again on October 7, 1999. Respondent replied on October 18, 1999 stating he had requested information from his bank and would forward it to the State Bar when it was received, along with the other information that the State Bar had requested.
99. On October 21, 1999 Respondent's assistant called the State Bar and asked for an extension of time to submit the trust account records. Respondent was given until November 23, 1999. To date Respondent has failed to submit any trust account records or communicate with bar counsel concerning this matter.
100. Respondent failed to hold client funds separate from his own funds.
101. Respondent failed to appropriately safeguard client funds.
102. Respondent failed to maintain complete records of the handling, maintenance and disposition of all funds coming into Respondent's possession.
103. Respondent failed to maintain complete records of all funds of a client coming into his possession and failed to render appropriate accounts to clients regarding them.
104. Respondent has failed to respond to a lawful demand for information, has failed to *482 cooperate with the State Bar, and has failed to furnish information to or respond promptly to a request from bar counsel.

COUNT NINE (00-0053)

(TRUST ACCOUNT)

Findings of Fact: Count Nine
105. The State Bar received an overdraft notice from Norwest Bank on or about January 2000, relating to Respondent's client trust account.
106. The overdraft notice indicated that check number 2062 in the amount of $106.00 was presented for payment of December 23, 1999. Norwest Bank honored the check, leaving Respondent with a negative balance of $45.16 in his client trust account.
107. The State Bar's staff examiner sent Respondent a charging letter on January 13,
108. 2000, requesting that Respondent file a written response regarding the overdraft notice and that he attach all supporting documentation. Respondent failed to respond to the State Bar's request.

COUNT TEN (00-0352)

(TRUST ACCOUNT)

Findings of Fact: Count Ten
108. The State Bar received an overdraft notice from Norwest Bank on or about March 2000, relating to Respondent's client trust account.
109. The overdraft notice indicated that check number 2009 in the amount of $106.00 was presented for payment of September 14, 1999. Norwest Bank honored the check, leaving Respondent with a negative balance of $38.19 in his client trust account.
110. The State Bar's staff examiner sent Respondent a charging letter on March 3, 2000, requesting that Respondent file a written response regarding the overdraft notice and that he attach all supporting documentation. Respondent failed to respond to the State Bar's request.

COUNT ELEVEN (99-1613)

(HALTERMAN)

Findings of Fact: Count Eleven
111. Respondent represented Monika A. Halterman in a domestic relations post-decree proceeding, having been asked by Ms. Halterman to substitute as her counsel of record in the matter. Ms. Halterman signed a fee agreement with Respondent on August 7.1998.
112. Prior to August 7, 1998, attorney Susan Schauf represented Ms. Halterman in the post-decree proceedings. On July 30, 1998, a hearing was held on a Petition to Show Cause/Contempt that had been filed on behalf of Ms. Halterman's ex-husband. The court imposed sanctions against Ms. Halterman and instructed that any objections to the court's findings had to be filed no later that August 21, 1998.
113. Ms. Halterman asked Respondent to accomplish four objectives for her; to immediately file an objection to the court's July 30. 1998 minute entry, to file a motion requesting that paragraph one of the July 30, 1998 minute entry be amended, to file a motion requesting that Mr. Halterman reimburse Ms. Halterman for certain expenses, and to file a motion asking that Mr. Halterman stop harassing her.
114. Respondent never informed Ms. Halterman that he could not or would not attempt to accomplish the four objectives that she had identified to him.
115. Ms. Halterman paid Respondent an initial retainer of $1,500.00, but has never received an accounting from Respondent as to how the money was spent.
116. Respondent prepared a Motion and Order for Withdrawal and Substitution of Counsel and sent it to Ms. Schauf on August 12, 1998 via facsimile and U.S. Mail.
117. Ms. Schauf signed the facsimile copy of the Motion and Order for Withdrawal and Substitution of Counsel on August 12 and faxed it back to Respondent on August 12, 1998.
118. Ms. Schauf received the original Motion and Order for Withdrawal and Substitution of Counsel in the mail and on August 20, *483 1998 she gave the original, executed Motion and Order for Withdrawal and Substitution of Counsel to E-Z Messenger Service to hand deliver the document to Respondent's office.
119. E-Z Messenger Service returned the original Motion and Order for Withdrawal and Substitution of Counsel to Ms. Schauf on August 24, 1998 due to their inability to deliver it to Respondent's office.
120. Ms. Schauf made numerous attempts to contact Respondent regarding the original Motion and Order for Withdrawal and Substitution of Counsel but was unsuccessful and on August 26, 1998 Ms. Schauf filed the original with the court.
121. On August 28, 1998, the original Motion and Order for Withdrawal and Substitution of Counsel was returned to Ms. Schauf by Judge Nygaard's office as it did not comply with Rule XII(2) of the Uniform Rules of Practice.
122. On August 31. 1998, Ms. Schauf forwarded the original Motion and Order for Withdrawal and Substitution of Counsel and Judge Nygaard's letter to Respondent.
123. On September 11, 1998 Ms. Schauf received a second original Motion and Order for Withdrawal and Substitution of Counsel. The second original Motion and Order for Withdrawal and Substitution of Counsel was executed by Ms. Schauf and returned to Respondent on September 11, 1998.
124. Respondent stated in his response to the State Bar that Ms. Schaufs office did not return the executed substitution to him, but rather Ms. Schaufs office related to Respondent's secretary that they would file the executed substitution with the court. This was a misrepresentation to the State Bar.
125. Respondent did not file a timely motion substituting as counsel for Ms. Halterman.
126. Respondent alleged that he timely filed a Motion Shortening Time and Order and a Motion to Extend Time for Objection/Response with regard to the court's July 30, 1998 minute entry; however, the court denied the motions as having been filed untimely.
127. On September 10, 1998 the court issued a minute entry granting Mr. Halterman's attorney $1,500.00 in attorney's fees after noting that no objection to the application for attorney's fees had been filed.
128. On October 13, 1998, Respondent filed a Motion for Findings of Facts and Conclusions of Law requesting that the court support its July 30, 1998 minute entry order and its September 10, 1998 minute entry order regarding sanctions.
129. On October 10, 1998 Respondent also filed a Motion for Reconsideration on the grounds that he had recently been retained and that for unknown reasons the court did not receive the Motion and Order for Withdrawal and Substitution of Counsel, the Motion Shortening Time and Order and the Motion to Extend Time for Objection/Response that Respondent alleges he filed.
130. In a November 10, 1998 minute entry, the court noted that Respondent was not the attorney of record and his motion requesting findings of fact and conclusions of law was untimely as it was made after the trial. The court also noted that a request made by Respondent on October 9, 1998, asking the court to reconsider ("alter") its order entered on September 10, 1998, was also untimely.
131. In a January 6, 1999 minute entry, the court noted that Respondent had failed to file a notice of appearance, notice of association of counsel, or a stipulation for substitution of counsel and that therefore Respondent was not the attorney of record. The court stated that it could not and did not consider any of the pleadings and/or motions filed by Respondent up to that time.
132. On February 11, 1999, Mr. Halterman filed an Order to Show Cause/Contempt. In the minute entry that was issued March 18, 1999 regarding the Order to Show Cause/Contempt, the court instructed Respondent to file a notice of appearance.

*484 STATE BAR COMPLAINT DATED JUNE 8.2001

COUNT ONE (00-1149)

(GRIJALVA)

Findings of Fact: Count One
133. Sylvia Grijalva retained Respondent in September 1998 to defend her against fraud charges. Ms. Grijalva gave Respondent a $5,000.00 retainer.
134. During the representation, Ms. Grijalva met with Respondent once and she received two letters from Respondent that pertained to her case.
135. When Ms Grijalva called Respondent's office for information she was told that Respondent was either in court or with another client. Ms. Grijalva left numerous messages for Respondent, which he never responded to.
136. In a December 1998 meeting with Respondent, Ms. Grijalva gave Respondent a list of paperwork that she needed from the opposing party and Respondent told Ms. Grijalva that he would request the information and send a copy to her house. Respondent never requested the documents from the opposing party.
137. Respondent did not act with reasonable diligence and promptness in representing Ms. Grijalva in this matter. Respondent represented Ms. Grijalva for approximately two years and did little work on her behalf during this time. Respondent failed to request documents that Ms. Grijalva needed to defend against the opposing party's allegations.
138. Respondent failed to promptly reply to Ms. Grijalva's request for information and failed to explain matters to Ms. Grijalva so she could make informed decisions. Other than forwarding some information and several telephone calls, Respondent failed to respond to Ms. Grijalva's telephone calls and failed to inform her what he was doing to protect her interests.
139. Ms. Grijalva never received a last billing from Respondent, and was never informed whether her retainer was spent. No amount of the retainer was returned to Ms. Grijalva at the end of the representation.

COUNT TWO (00-1681)

(MORRIS)

Findings of Fact: Count Two
140. Sharan Morris retained Respondent to represent her in a divorce action.
141. Ms. Morris's divorce was final on March 20, 2000, but Respondent failed to provide her with a copy of the final papers and a copy of the qualified domestic relations order (QDRO).
142. Respondent's billing statements to Ms. Morris included numerous double-charges. The billing errors amounted to $729.76, which was charged against Ms. Morris's retainer.
143. Ms. Morris asked Respondent to send her the documents from her file relating to the final papers and the QDRO. Respondent failed to turn over these documents until after Ms. Morris filed the bar complaint. After Respondent returned her file, Ms. Morris found information in the file indicating that Respondent was not doing his job. Ms. Morris found letters from Mr. Miller, who was opposing counsel, showing that Mr. Miller was also trying to reach Respondent, with no success.
144. Ms. Morris called Respondent's office on August 1, 2000, and the office person told her that Respondent had been called and notified of Ms. Morris's call. Ms. Morris was informed that she would receive a call back; however, no calls were made to her for over another month.

CONCLUSIONS OF LAW

COUNT ONE (97-2568)

(HANNA)

Conclusions of Law: Count One
1. Respondent did not have the legal knowledge or skill that was necessary to represent his client on appeal in this matter. Respondent relied on two procedural orders signed by the clerk of the appellate court to justify his failure in filing the opening brief, instead of following the appellate court's order to file the opening brief within thirty (30) *485 days of the appellate court's October 17, 1997, order. Respondent failed to ask the court for clarification as to when the opening brief was due.
2. Respondent did not have the legal knowledge or skill that was necessary to represent his client on appeal in this matter. Respondent failed to follow Rule 11, Ariz.R.Civ.App.P. in obtaining a copy of the trial transcript. Respondent failed to order the transcript no later than 10 days from the filing of the notice of appeal. Respondent failed to make satisfactory arrangements for payment of the cost of the trial transcript and failed to file a notice that arrangements to obtain the trial transcript had been completed.
3. Respondent did not act with reasonable diligence and promptness in representing his client in this matter. Respondent failed to promptly pay the filing fee for the appeal, failed to re-file the request for an extension of time within which to file the opening brief, failed to timely file the opening brief as ordered by the appellate court, failed to timely order the trial transcript, failed to timely make satisfactory arrangements for payment of the cost of the trial transcript, failed to timely file a notice that arrangements to obtain the trial transcript had been completed, and failed to respond to opposing counsel's motion to dismiss that was filed December 3, 1997.
4. Respondent failed to make reasonable efforts to expedite litigation consistent with the interests of his client resulting in the appeal being dismissed twice.
5. Respondent engaged in conduct that is prejudicial to the administration of justice by allowing his client's appeal to be dismissed on procedural grounds instead of it being decided on the merits.
6. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER's 1.1, 1.3, 3.2 and 8.4(d).

COUNT TWO (98-1565)

(OPPMAN)

Conclusions of Law: Count Two
7. Respondent failed in his obligation to comply with the Arizona Rules of Civil Procedure and the Uniform Rules of Practice when he filed Mr. Oppman's 26.1 disclosure statement and the response to Mr. Oppman's motion for summary judgment.
8. Respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation when he told the court in the motion for reconsideration that he had not received notice of the hearing on the motion for summary judgment.
9. Respondent engaged in conduct prejudicial to the administration of justice when Respondent failed to appear for the summary judgment hearing on October 14. 1997, allowing a judgment to be entered against Mr. Oppman.
10. Respondent assisted in the unauthorized practice of law by allowing his secretary/paralegal to prepare legal documents for Mr. Oppman without supervising her work.
11. The record does not establish by clear and convincing evidence that Mr. Oppman suffered monetary damage resulting from Respondent's misconduct.
12. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER's 1.2(a), 1.3, 1.4, 3.1, 3.2, 3.3(a), 3.4(c), 5.5 (b), 8.4(c) and (d).

COUNT THREE (99-0262)

(SUAREZ)

Conclusions of Law: Count Three
13. Respondent did not have the legal knowledge or skill that was necessary to represent his client in this matter, as the statute of limitations was not tolled by Mr. Suarez' incarceration and Respondent failed to file the complaint in a timely manner.
14. Respondent failed to consult with Mr. Suarez about not filing the complaint within the statute of limitations.
15. Respondent failed to keep Mr. Suarez reasonably informed about his EEOC case and failed to explain the matter to the extent necessary to permit Mr. Suarez to make an informed decision about his EEOC case.
*486 16. Respondent failed to diligently pursue Mr. Suarez' EEOC case after receiving the right-to-sue letter when he failed to file the complaint.
17. Respondent knowingly made a false statement of material fact when he denied to bar counsel that he represented Mr. Suarez in the EEOC matter.
18. Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he denied to bar counsel that he represented Mr. Suarez in the EEOC matter.
19. Respondent engaged in conduct that is prejudicial to the administration of justice by allowing the statute of limitations to run on Mr. Suarez' claim instead of the claim being decided on the merits.
20. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER's 1.1, 1.2, 1.3, 1.4, 3.2, 3.3(a), 8.1, 8.4(c) and (d).

COUNT FOUR (99-0262)

(SUAREZ)

Conclusions of Law: Count Four
21. Respondent failed to consult with Mr. Suarez about the appeal and failed to act with reasonable diligence and promptness in filing the notice of appeal.
22. Respondent made a false statement of material fact when he told the State Bar that he had not agreed to handle Mr. Suarez' appeal.
23. Respondent engaged in conduct prejudicial to the administration of justice when he failed to properly prepare for trial and when he failed to file the notice of appeal.
24. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER's 1.1, 1.2, 1.3, 1.4, 3.2, 3.3(a), 8.1, 8.4(c) and (d).

COUNT FIVE (98-1281)

(TRUST ACCOUNT)

Conclusions of Law: Count Five
25. Respondent failed to maintain complete records of the handling, maintenance and disposition of client and/or third party trust account funds.
26. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER 1.15(a) and Supreme Court Rules 43(d) and 44(b)(3).

COUNT SIX (99-0695)

(TRUST ACCOUNT)

Conclusions of Law: Count Six
27. Respondent failed to maintain complete records of the handling, maintenance and disposition of client and/or third party trust account funds.
28. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER 1.15 and Rules 43 and 44, Ariz.R.S.Ct.

COUNT SEVEN

(TRUST ACCOUNT)

Conclusions of Law: Count Seven
29. Respondent failed to maintain client and/or third party property separate from his own property.
30. Respondent failed to maintain complete records of the handling, maintenance and disposition of client and/or third party funds.
31. Respondent failed to preserve complete trust account records of clients and/or third parties for five years.
32. Respondent's conduct as described in this count violated Rule 42, Ariz.R.S.Ct., specifically, ER 1.15, and Rules 43 and 44, Ariz.R.S.Ct.

COUNT EIGHT (99-1439)

(TRUST ACCOUNT)

Conclusions of Law: Count Eight
33. Respondent failed to hold client funds separate from his own funds.
34. Respondent failed to appropriately safeguard client funds.
35. Respondent failed to maintain complete records of the handling, maintenance *487 and disposition of all funds coming into Respondent's possession.
36. Respondent failed to maintain complete records of all funds of a client coming into his possession and failed to render appropriate accounts to clients regarding them.
37. Respondent has failed to respond to a lawful demand for information, has failed to cooperate with the State Bar, and has failed to furnish information to or respond promptly to a request from bar counsel.
38. Respondent's conduct as described in this count violated Rule 42, Ariz.R.S.Ct., specifically, specifically ER's 1.15 and 8.1, and Rules 43, 44, and 51(h) & (i)

COUNT NINE (00-0053)

(TRUST ACCOUNT)

Conclusions of Law: Count Nine
39. Respondent failed to hold client funds separate from his own funds.
40. Respondent failed to appropriately safeguard client funds.
41. Respondent failed to maintain complete records of the handling, maintenance and disposition of all funds coining into Respondent's possession.
42. Respondent failed to maintain complete records of all funds of a client coming into his possession and failed to render appropriate accounts to clients regarding them.
43. Respondent has failed to respond to a lawful demand for information, has failed to cooperate with the State Bar, and has failed to furnish information to or respond promptly to a request from bar counsel.
44. Respondent's conduct as described in this count violated Rule 42, Ariz.R.S.Ct., specifically, specifically ER's 1.15 and 8.1, and Rules 43, 44, and 51(h) & (i).

COUNT TEN (00-0352)

(TRUST ACCOUNT)

Conclusions of Law: Count Ten
45. Respondent failed to hold client funds separate from his own funds.
46. Respondent failed to appropriately safeguard client funds.
47. Respondent failed to maintain complete records of the handling, maintenance and disposition of all funds coming into Respondent's possession.
48. Respondent failed to maintain complete records of all funds of a client coming into his possession and failed to render appropriate accounts to clients regarding them.
49. Respondent has failed to respond to a lawful demand for information, has failed to cooperate with the State Bar, and has failed to furnish information to or respond promptly to a request from bar counsel.
50. Respondent's conduct as described in this count violated Rule 42, Ariz.R.S.Ct., specifically ER's 1.15 and 8.1, and Rules 43, 44. and 51(h) & (i)

COUNT ELEVEN (99-1613)

(HALTERMAN)

Conclusions of Law: Count Eleven
51. Respondent failed to provide competent representation to Ms. Halterman as he failed to timely substitute as counsel of record in the matter, which precluded the court from considering any of the pleadings and/or motions that Respondent had filed on Ms. Halterman's behalf. Respondent also filed numerous motions and/or pleadings in an untimely manner, which may have precluded the court from considering them even if Respondent had been the attorney of record at the time of filing.
52. Respondent failed to abide by Ms. Halterman's request that he pursue several objectives for her, including Ms. Halterman's request that an objection be filed to the July 30, 1998 minute entry order.
53. Respondent failed to act with reasonable diligence and promptness in representing Ms. Halterman, as Respondent failed to timely substitute as counsel of record in the matter, failed to timely file an objection to the July 30, 1998 minute entry, and failed to timely file a motion for reconsideration.
54. Respondent failed to keep Ms. Halterman reasonably informed about her case.
*488 55. Respondent failed to provide Ms. Halterman with an accounting as to how her retainer had been spent.
56. Respondent made misrepresentations to the State Bar regarding the substitution of counsel motion and order.
57. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER's 1.1, 1.2, 1.3, 1.4, 1.15, 8.1, 8.4 and Supreme Court Rules 43 and 44.

STATE BAR COMPLAINT DATED JUNE 8, 2001

COUNT ONE (00-1149)

(GRIJALVA)

Conclusions of Law: Count One
58. Respondent's fee in this matter was unreasonable. Ms. Grijalva never received a last billing from Respondent and was never informed whether her retainer was spent. No amount of the retainer was returned to Ms. Grijalva at the end of the representation.
59. Ms. Grijalva asked for her paperwork back, but Respondent failed to respond to this request.
60. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER's 1.3. 1.4, 1.5, 1.16(d).

COUNT TWO (00-1681)

(MORRIS)

Conclusions of Law: Count Two
61. Respondent did not act with reasonable diligence or promptness. Respondent failed to promptly reply to Ms. Morris's request for information.
62. Respondent failed to explain matters to Ms. Morris so she could make informed decisions. Respondent failed to respond to Ms. Morris's telephone calls and failed to inform her what he was doing to protect her interests. Respondent failed to keep Ms. Morris reasonably informed about the representation.
63. Respondent failed to return documents to Ms. Morris after she requested them.
64. Respondent failed in his obligation to comply with the Arizona Rules of the Supreme Court, Rule 63(b), as he never notified Ms. Moms that he was on summary suspension since June 12, 2000.
65. Respondent's conduct in this count violated Rule 42 Ariz.R.S.Ct., specifically ER's 1.3, 1.4, & 1.16(d); and, Rule 63(b), Ariz.R.S.Ct.

LEGAL ANALYSIS AND DISCUSSION
Respondent has admitted to the following ethical violations:

ER 1.1 (Competence) 2 Violations
ER 1.2 (Scope of Representation) 2 Violations
ER 1.3 (Diligence) 5 Violations
ER 1.4 (Communication) 5 Violations
ER 1.5 (Fees) 1 Violation
ER 1.15 (Safe Keeping Property) 7 Violations
ER 1.16 (Termination Representation) 2 Violations
ER 3.1 (Meritorious Claims and Contentions) 1 Violation
ER 3.2 (Expediting Litigation) 2 Violations
ER 3.3 (Candor Toward the Tribunal) 1 Violation
ER 3.4 (Fairness to Opposing Party and Counsel) 1 Violation
ER 5.5 (Restrictions on Right to Practice) 1 Violation
ER 8.1 (Bar Admission and Disciplinary Matters) 4 Violations
ER 8.4(c) (Misconduct) 2 Violations
ER 8.4(d) (Conduct Prejudicial to the Administration Of Justice 2 Violations
SCR 43 (Trust Account Verification) 6 Violations
SCR 44 (Trust Accounts: Interest Thereon) 6 Violations
SCR 51 (Grounds for Discipline) 3 Violations
SCR 63 (Notice to Clients, Adverse Parties and Other Counsel) 1 Violation

*489 Additionally, the Hearing Officer finds, with respect to the Suarez matter, that the State Bar proved by clear and convincing evidence two additional violations each of ER's 1.1. 1.2, 1.3, 1.4, 3.2, 3.3(a). 8.1 and 8.(c)(d).

SANCTIONS
Based on the foregoing admissions and findings, the only remaining issue is that of sanctions. `The object of disciplinary proceedings is not punish the lawyer, but to protect the public and deter similar conduct by other lawyers." In re Rivkind, 164 Ariz. 154, 791 P.2d 1037 (1990).
In Arizona, the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") are frequently a guideline imposing discipline. When analyzing the appropriate discipline to be imposed, the ABA Standards suggest the following considerations:
A. The duty violated;
B. Respondent's mental state;
C. The injury to the client; and
D. Any aggravating or mitigating certain factors be considered ABA Standards 3.0.

DUTIES VIOLATED
By his own admission, Respondent has violated ethical duties owed to his clients, the public, the legal system, and to the legal profession. Many of Respondent's ethical violations, standing alone, would warrant suspension. See, e.g., Standards 4.42 (Lack of Diligence). Others warrant disbarment. See, e.g., Standards 6.11 (Candor Toward Tribunal) and Trust Account violations.
On the trust account violations, Respondent has admitted consistently overdrawing his trust account over a period of years. He wrote checks from his trust account to the State Bar for convention dues, a restaurant, an educational institution, and to pay for personal expenses. His account was overdrawn on at least on two occasions, and he was unable to produce trust account records or other documentation which might explain the overdrafts. Absent any explanation and based upon the evolving interpretations of the trust account rules, it must be concluded that the overdrafts resulted in misappropriation of client funds. Respondent repeatedly violated the trust account rules, then refused, or was unable, to provide supporting documentation to the State Bar.
When taken together, the trust account violations and the other ethical misconduct lead to the inevitable conclusion that the appropriate sanction is disbarment.

RESPONDENT'S MENTAL STATE
Respondent, on the issue relating to his mental state, offered a volume of medical records. The records indicate a decade-long history of depression associated with migraine and tension headaches. At the hearing. Respondent offered little insight as to how his physical and emotional problems affected him in the practice of law. Certainly no evidence linking any specific act or omission of misconduct was presented.
His former attorney, Jeffrey Minker, Esq., testified to the fundamental paralysis which has gripped Respondent during the course of these proceedings. That paralysis, by any objective measurement, continues.
On the evidence presented, including Respondent's ineffective efforts to represent himself in the disciplinary process, the conclusion is inescapable that Respondent is not now, either physically or emotionally, fit to practice law. While his physical and emotional condition most likely contributed to his ethical misconduct, the record on which these matters will be decided is not at all helpful in quantifying the degree to which it contributed. Suffice it to say that, from the record, it does not appear that Respondent has resolved his underlying physical or emotional problems.

II. INJURY TO THE CLIENT

The injury to Respondent's clients, both actual and potential, is equally evident. Clearly Respondent's clients were harmed by his manifold violations, including but not limited to his failure to communicate with them, his failure to diligently perform services for which he has been retained, and his misappropriation *490 of client funds resulting from overdrafts in his trust account.
Additionally, the record supports an award of restitution for monetary damages to the following:

 1. Mr. Suarez $ 3,100
 2. Ms. Halterman $ 3,000
 3. Ms. Grijalva $ 5,000
 4. Ms. Morris $ 729.76

Although the State Bar requested an award in restitution of $9,460.63 to Mr. Oppman, the record is vague as to whether Mr. Oppman suffered monetary damage resulting from Respondent's misconduct. Since this was not proven by clear and convincing evidence, no restitution will be awarded as to Mr. Oppman. The record establishes that the injury to Respondent's clients was repeated and ongoing for a period of years prior to his interim suspension. Taken cumulatively, this harm, both actual and potential, raises serious questions relating to Respondent's fitness to practice law.

AGGRAVATION AND MITIGATION
The Hearing Officer finds the following aggravating factors:
1. Pattern of Misconduct.
2. Multiple Offenses.
3. Bad faith, obstruction of disciplinary process.
4. Substantial Experience in the Practice of Law.
5. Indifference to making restitution.
The Hearing Officer, despite Respondent's argument to the contrary, finds no mitigating factors.
The State Bar correctly points out that pursuant to ABA Standards 9.32, a disability is considered a mitigating factor only when; (1) there is medical evidence that the Respondent is affected by a disability; (2) the disability caused the misconduct; (3) the Respondent's recovery from the disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. Citing, In re Augenstein, 178 Ariz. 133, 871 P.2d 254. 178 Ariz. 133, 871 P.2d 254 (1994). The evidence here is highly suggestive that the Respondent has suffered from debilitating headaches and depression. Regrettably, there is no evidence to link that depression to the numerous ethical violations to which Respondent has admitted. Similarly, although the medical records are suggestive that Respondent's medical condition has improved, no evidence was presented which would suggest a meaningful and sustained period of successful rehabilitation. Similarly, there is no evidence that the recovery has arrested the misconduct in such a way that a recurrence of misconduct is unlikely. The record does not support a mitigating factor of a physical or mental-disability or impairment.

PROPORTIONALITY ANALYSIS
An appropriate sanction must be proportional to those lawyers who have been disciplined for similar conduct. In this regard, the Hearing Officer has looked at the following decisions. In the matter of Engan 170 Ariz. 409, 825 P.2d 468 (1992), the Respondent was charged with eleven counts of ethical violations including failure to communicate adequately with clients, failure to respond to reasonable requests for information from clients, failure to represent clients diligently and competently, failure to return or provide files to the client, failure to respond and disclose information requested by the State Bar, failure to perform work for which Respondent was hired, failure to remit funds to client, and failure to appear on a client's behalf on a hearing. After applying the ABA Standards to Engan's conduct, the Supreme Court disbarred him. In its determination of proportionality the Court cited In re Nefstead 163 Ariz. 518, 789 P.2d 385 (1990), In re Heckstrom [Hegstrom] 153 Ariz. 286, 736 P.2d 370 (1987), and In re MacAskill 163 Ariz. 354, 788 P.2d 87 (1990). Each of these disciplinary matters involved ethical violations similar to those engaged in and admitted to by Respondent. Under the facts established in this proceeding, disbarment is clearly the appropriate sanction.

*491 RECOMMENDATION

It is the recommendation of the Hearing Officer that Respondent be disbarred, and that he be ordered to pay restitution in the following amounts:

 1. Mr. Suarez $ 3,100
 2. Ms. Halterman $ 3,000
 3. Ms. Grijalva $ 5,000
 4. Ms. Morris $ 729.76

It is further ordered that Respondent be ordered to repay the State Bar the costs of this proceeding.
DATED April 22, 2002.
Dwight M. Whitley, Jr.
Hearing Officer 9I
NOTES
[1] Commissioner Choate did not participate in these proceedings.
[2] The Commission voiced its concern regarding the lack of evidence in the record for restitution to William Optman.